**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

VINCENT D. DIFELICE, on behalf of        )
himself and all others similarly situated,   )
                                         )
        Plaintiff,                       )
                                         )
                v.                       )        **Case No. 1:04cv889**
                                         )
US AIRWAYS, INC.                         )
                                         )
        Defendant.                       )

<u>**MEMORANDUM OPINION**</u>

Plaintiff in this breach of fiduciary duty case brought pursuant to §§ 502(a) and 409(a)

of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a) and

1109(a), seeks certification of the following class of plaintiffs pursuant to Rule 23,

Fed.R.Civ.P.:

> All participants and their beneficiaries in the US Airways, Inc. 401(k) Savings
> Plan (the "Plan") for whose accounts the fiduciaries of the Plan acquired or
> held units of the US Airways Group, Inc. Common Stock Fund at any time
> between August 1, 2001 and August 11, 2002.

Defendant US Airways, Inc. ("US Airways") raises several objections to the certification of

plaintiff's proposed class, and argues alternatively that in the event of certification, several

reasons require the shortening of the proposed class period.

**I.**

US Airways, the sole remaining defendant,[1] is a Delaware corporation and a major

American passenger airline.  In 1988, US Airways created the US Airways, Inc. 401(k)

---

[1] Defendant Fidelity Management Trust was dismissed for the reasons set forth in the
Court's September 27, 2005 Memorandum Opinion.  *See DiFelice v. US Airways, Inc.*, 397
F.Supp.2d 735 (E.D.Va. 2005).

Savings Plan ("the Plan"), an ERISA retirement plan, which allowed Plan participants to contribute to their individual accounts a portion of their income on a tax free basis.  The Plan allows participants to choose from among thirteen different investment options, including the the US Airways Group, Inc. Common Stock Fund (the "Company Stock Fund"), which consists primarily of the publicly traded shares of US Airways Group, Inc. ("Group"), US Airways' parent corporation.  US Airways was designated as the administrator of the Plan and a named fiduciary of the Plan as that term is defined by ERISA.  As such, US Airways was responsible for the selection and monitoring of the investments available to the Plan participants.

During the period 2000-2002, US Airways suffered several business setbacks and financial misfortunes which led ultimately to its bankruptcy filing on August 11, 2002.  US Airways' attempt to improve its competitive position in the airline industry by merging with United Airlines, Inc. ("United") was thwarted on July 27, 2001 when the United States Department of Justice publicly announced its intention to block the proposed merger by filing suit pursuant to the antitrust laws.  US Airways was dealt a further blow by the terrorist attacks of September 11, 2001, which negatively impacted domestic air travel generally, and were particularly devastating for US Airways because it uses Ronald Reagan National Airport as a hub, and derives a disproportionate amount of its revenue from travel in the Northeast. Throughout the remainder of 2001 and into 2002, US Airways continued to lose a significant amount of cash through its operations, estimated in early 2002 to be $3 million per day.  The airline sought to avoid bankruptcy by attempting to obtain a low interest loan from the government, which was contingent on the renegotiation of certain of its labor contracts and debts.  These efforts were ultimately unsuccessful.  On June 27, 2002, US Airways appointed

Aon Fiduciary Counselors, Inc. as an independent fiduciary with responsibility for the Company Stock Fund. On August 11, 2002, Group and its affiliated companies, including US Airways, filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

Plaintiff Vincent D. DiFelice has been employed by US Airways since 1990 and was a participant in Plan at all times during the proposed class period. At certain points during the proposed class period, DiFelice chose to invest a portion of his Plan assets in Company Stock Fund. Specifically, on October 30, 2001, in the wake of a steep decline in the value of Group's common stock following the terrorist attacks of September 11, 2001, DiFelice chose to invest nearly 100% of his Plan assets in the Company Stock Fund. On March 7, 2002, he directed that this investment be sold resulting in a gain of $95,800 or approximately 43% of his initial investment. Less than seven weeks later, on April 24, 2002, DiFelice again invested nearly all of his Plan assets in the Company Stock Fund. He retained this investment throughout the Spring and Summer of 2002, selling it in September 2002 following Group's and US Airways' bankruptcy filing. In the end, DiFelice's investment in the Company Stock Fund resulted in a loss to him of approximately $243,000.

DiFelice has brought this action pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), on behalf of himself and a proposed class of plaintiffs, alleging that US Airways breached its fiduciary duty under ERISA § 404(a), 29 U.S.C. § 1104(a), by failing to exercise its authority during the proposed class period to remove the Company Stock Fund as a Plan investment option.

## II.

As a threshold matter, US Airways argues that DiFelice lacks the prudential and Article III standing necessary to bring this suit under ERISA §§ 502(a)(2) and 502(a)(3), 29

U.S.C. §§ 1132(a)(2) and (a)(3),[2] and therefore cannot serve as the class representative.  In this regard, it is well-settled that a class representative must "establish[] the requisite of a case or controversy with the defendant" before bringing suit on behalf of the class.  *See Central States SE & SW Areas Health & Welfare Fund, L.L.C. v. Merck-Medco Managed Care L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974)); *see also Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, J., concurring in part and dissenting in part) ("a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs . . . [s]tanding cannot be acquired through the back door of a class action.").  Thus, in order to bring this lawsuit, DiFelice must satisfy the standing requirements imposed by Article III's "case or controversy requirement," and the statutory standing requirements imposed by ERISA itself.  *See Bollig v. Christian Cmty. Homes & Servs., Inc.*, No. 02-C-532-C, 2003 WL 23200362, at *2 (W.D.Wis. July 10, 2003); *Carducci v. Aetna U.S. Healthcare*, 247 F.Supp.2d 596, 621 (D.N.J. 2003).

First, US Airways argues that DiFelice is unable to satisfy the Article III standing requirement because the Plan suffered no injury in fact.  In order to satisfy the requirements

_____

[2] ERISA § 502(a), 29 U.S.C. § 1132(a), states, in pertinent part, as follows:

A civil action may be brought . . . (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title; (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

29 U.S.C. §§ 1132(a).

of Article III a plaintiff must prove that he, or the entity on whose behalf he sues,[3] has

suffered an injury in fact, *i.e.*, the invasion of a legally protected interest which is (a) concrete

and particularized, and (b) actual or imminent, not conjectural or hypothetical.  *Lujan v.*

*Defenders of Wildlife*, 505 U.S. 555, 560 (1992) (internal quotations and citations omitted).

This element is clearly satisfied here.  The loss to the Plan's assets due to US

Airway's allegedly imprudent investment are concrete and actual.[4]  The Company Stock Fund

consisted primarily of shares of Group's publicly traded stock, and it is not disputed that the

value of that stock declined over the course of the proposed class period, or that much of the

value of the Company Stock Fund was ultimately eliminated during Group's bankruptcy

reorganization.  US Airways' argument that the Company Stock Fund increased in value is

---

[3] The parties, it appears, assume that to establish Article III standing for purposes of
ERISA 502(a)(2) it is only necessary to demonstrate that the Plan suffered an injury-in-fact.
Because DiFelice clearly suffered a loss to his own account during the proposed class period,
it is unnecessary to resolve whether the plaintiff bringing the action on behalf of the Plan
must have also suffered injury-in-fact.  *Compare Harley v. Minnesota Mining and Mfg. Co.*,
284 F.3d 901, 906 (8th Cir. 2002) *cert. denied*, 537 U.S. 1106 (2003) ("Thus, the limits on
judicial power imposed by Article III counsel against permitting participants or beneficiaries
who have suffered no injury in fact from suing to enforce ERISA fiduciary duties on behalf of
the Plan."); *Central States Southeast and Southwest Areas Health and Welfare Fund v.*
*Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 200 (2d Cir. 2005) *with Harley*, 284
F.3d at 910 (Bye, J., concurring in part and dissenting in part) (Plaintiffs "satisfy the case-or-
controversy requirements of Article III by standing in the shoes of a party that clearly has
standing.").

[4] A plaintiff's burden of proof with respect to the elements of Article III standing
correlates with the burden of proof he must satisfy on the elements of his claim at the
particular stage of the litigation.  Thus, at the pleading stage the plaintiff must simply allege
facts sufficient to find standing; at the summary judgment stage the plaintiff must set forth
specific facts in support of its standing which will be taken as true.  *See Lujan*, 504 U.S. at
561 ("Since they are not mere pleading requirements but rather an indispensable part of the
plaintiff's case, each element must be supported in the same way as any other matter on which
the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required
at the successive stages of the litigation.").  DiFelice has set forth specific facts in support of
the Plan's Article III standing sufficient to survive summary judgment.

not persuasive because it fails to account for the capital inflows which arguably increased the total value of the Company Stock Fund despite a drop in the value of Group stock. Furthermore, even assuming the Company Stock Fund did not decline in value, DiFelice would still be able to demonstrate injury-in-fact because the injury-in-fact determination in this context requires only that the Company Stock Fund underperformed as compared to a prudent investment. *See Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1243 (2d Cir. 1989) ("If, but for the breach, the Fund would have earned more than it actually earned, there is a 'loss' for which the breaching fiduciary is liable."); *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) ("[T]he measure of loss applicable under ERISA section 409 requires a comparison of what the Plan actually earned on the . . . investment with what the Plan would have earned had the funds been available for other Plan purposes.").

DiFelice also satisfies the statutory standing requirements imposed by ERISA itself. ERISA § 502(a)(2) gives participants the ability to bring an action "for appropriate relief" under ERISA § 409.  29 U.S.C. § 1132(a)(2).  ERISA § 409, in turn, makes a breaching fiduciary "personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109.  Thus, a plaintiff has statutory standing under ERISA § 502(a)(2) only for claims brought in a representative capacity for losses suffered to the Plan. As the Supreme Court held in *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985), ERISA § 409 does not provide a cause of action for extra-contractual damages caused by a fiduciary's breach.  Unlike the plaintiff in *Russell*, DiFelice has clearly alleged that he brought this action not for extra-contractual damages, but to recover losses to the Plan,[5] and he

---

[5] The Prayer for Relief of DiFelice's First Amended Class Action Complaint asks the Court to "[r]equire Defendants to make good to the 401(k) Plan and its Participants and

therefore satisfies the statute's standing requirement.  *See In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 241 (3d Cir. 2005) (distinguishing the suit in *Russell* as a private cause of action for extra-contractual and punitive damages).  Nor is this conclusion undermined by the fact that any recovery by the Plan may eventually be allocated among those Plan participants who suffered an individual loss caused by US Airways' alleged breach.  A retirement plan, like the Plan at issue here, is nothing more than an aggregation of its participant's individual accounts, and therefore any loss to the Plan will have caused a loss to some or all of the plan's individual accounts.  It follows that any recovery through a suit brought on behalf of a plan pursuant to ERISA § 502(a)(2) and § 409(a) will redound to the ultimate benefit of those participants' individual accounts affected by the fiduciary's breach. *See, e.g., In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 241 (3d Cir. 2005) ("The fact that damages paid to the Savings Plan for breaches of fiduciary duties will also indirectly benefit its participants does not bar a derivative action under §§ 1109 and 1132(a)(2)."); *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999), *cert. denied*, 528 U.S. 1116 (2000) (claim for breach of fiduciary duties is not a claim for benefits); *Kuper v. Iovenko*, 66 F.3d 1447, 1452-53 (6th Cir. 1995).[6]  This fact does not defeat a participant's standing to bring a

_____

beneficiaries all losses incurred due to Defendants' breaches of fiduciary duty as proven at trial."

    [6] *Fisher v. J.P. Morgan Chase & Co.*, 230 F.R.D. 370 (S.D.N.Y. 2005), cited by US Airways, does not counsel a contrary result.  First, the Fifth Circuit decision the district court cited to support its position that a suit in which the recovery will pass through the plan to individual participants is not brought on behalf of the plan has been reversed by an *en banc* decision.  *See Fisher*, 230 F.R.D. at 375-76 (citing *Milofsky v. American Airlines, Inc.*, 404 F.3d 338 (5th Cir. 2005) *rev'd per curiam*, __ F.3d __, 2006 WL 488622 (5th Cir. 2006) (en banc)).  Second, the district court failed to address the pregnant question of where any Plan recovery would ultimately go if not to individual plan participants.  *Id.*

suit under ERISA on behalf of the Plan.

Further, because eligible individual account plans or EIAPs, like the Plan at issue here, contemplate the provision of investment choices for participants, the class of plan participants who may have suffered loss due to a breach is likely to be a subset of all plan participants.  In the instant case for example, this subset consists of those participants invested in the Company Stock Fund. The fact that only this subset will benefit from the distribution of any recovery by the plan does not bar the suit under § 502(a)(2) since "[t]he fiduciary's liability is not limited to plan 'losses that will ultimately redound to the benefit of all participants.'" *Schering-Plough*, 420 F.3d at 238-41; *see also Kuper*, 66 F.3d at 1453 ("We conclude that plaintiffs' position that a subclass of plan participants may sue for breach of fiduciary duty is correct.").  As the Sixth Circuit cogently pointed out:

> Defendants' argument that a breach must harm the entire plan to give rise to liability under § 1109 would insulate fiduciaries to breach their duty so long as the breach does not harm all of a plan's participants.  Such a result clearly would contravene ERISA's imposition of fiduciary duty that has been characterized as "the highest known to law."  Furthermore, the ruling that plaintiffs seek would benefit the Plan as a whole and foreclose any subsequent litigation because it would cure any harm that the Plan suffered.

*Kuper*, 66 F.3d at 1453 (internal citations omitted).  Thus, DiFelice's statutory standing under ERISA § 502(a)(2) is not affected by the fact that only a subset of Plan participants will benefit from any recovery by the Plan.

US Airways' final standing argument concerns DiFelice's ability to seek relief pursuant to ERISA 502(a)(3).  This provision allows participants to sue for equitable relief and does not permit an individual participant to sue for damages.  *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002).  US Airways contends that DiFelice is seeking damages and therefore lacks Article III standing to pursue this claim, presumably

-8-

because there is no likelihood that his injury will be redressed by a favorable ruling under this statute. *See Lujan*, 504 U.S. at 561. This argument fails because US Airways wrongly assumes that DiFelice is suing for damages under ERISA § 502(a)(3). In fact, the only relief DiFelice seeks pursuant to § 502(a)(3) is whatever may be necessary to facilitate distribution of any recovery obtained by the Plan.[7] The damages sought by DiFelice and his proposed class are sought pursuant to § 502(a)(2) on behalf of the Plan, and not § 502(a)(3), and therefore DiFelice has standing to pursue his § 502(a)(3) claim.

In sum, DiFelice has standing to bring this suit under the requirements of Article III of the Constitution because he has set forth facts in support of the conclusion that both he and the Plan suffered an injury attributable to US Airways' breach of fiduciary duty which is likely to be redressed by a favorable ruling. He also has standing pursuant to ERISA because, for purposes of § 502(a)(2), he is a participant suing on behalf of the Plan, and, for purposes of § 502(a)(3), he is a participant seeking equitable relief. The separate question of whether DiFelice "may be allowed to present claims on behalf of others who have similar, but not identical, interests [which] depends not on standing, but on an assessment of typicality and adequacy of representation" is addressed below. *See* 7AA Charles Alan Wright, et al., *Federal Practice and Procedure* § 1785.1 at 388-89 (2005).

### III.

Given DiFelice's showing of standing, the next step is to consider whether class

---

[7] It is entirely possible that, in the event the Plan obtains a recovery, the parties will agree on a methodology for allocation to Plan participants of the recovery without the Court's involvement. DiFelice's reliance on § 502(a)(3) is conditioned on the possibility that an impasse over the appropriate allocation will necessitate the Court's involvement, and is appropriate in these circumstances. *See infra* Part IV.

certification is appropriate under Rule 23, Fed.R.Civ.P.  In this regard, a motion for class

certification involves a two part analysis.  First, the movant must demonstrate that the

proposed class satisfies the requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims
> or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of
> the class.

Rule 23(a), Fed.R.Civ.P.  Should the party seeking certification satisfy these requirements, he

must then further demonstrate that the proposed class fits into one of the three categories of

actions identified in Rule 23(b), Fed.R.Civ.P.  And, in considering class certification motions,

it is important to bear in mind the Fourth Circuit's direction to "give Rule 23 a liberal rather

than a restrictive construction, adopting a standard of flexibility in application which will in

the particular case 'best serve the ends of justice for the affected parties and . . . promote

judicial efficiency.'" *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th Cir.

2003), *cert. denied* 542 U.S. 915 (2004).

## A.

*1. Numerosity*

The proposed class easily satisfies Rule 23(a)(1)'s requirement that it be "so

numerous that joinder of all members is impracticable."  The Plan itself had approximately

15,000 participants at the end of calendar year 2001, and several thousand of these

participants had some portion of their account invested in the Company Stock Fund during

the proposed class period.  These numbers easily satisfy the numerosity requirement.  *See,*

*e.g., Gunnells*, 348 F.3d at 425 (1,400 member class easily satisfies the numerosity

requirement); *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir.

1992) ("480 potential class members would easily satisfy the numerosity requirement"); *Lilly*

*v. Harris-Teeter Supermarket*, 720 F.2d 326, 333 (4th Cir. 1983) (229 class members was

"easily enough to demonstrate the existence of the class").

*2. Commonality*

The commonality requirement of Rule 23(a)(2) is satisfied if "common questions [are]

dispositive and overshadow other issues." *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138,

146 (4th Cir. 2001). And in this respect, "[m]inor differences in the underlying facts of

individual class members' cases do not defeat a showing of commonality where there are

common questions of law." *See Hewlett v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211, 216

(D.Md. 1997).

These principles, applied here, make clear that the class allegations meet the Rule's

commonality requirement. This follows from the fact that the central question at issue in this

litigation is whether US Airways breached its fiduciary duty to select and monitor investment

options prudently. *See DiFelice v. US Airways, Inc.*, 397 F.Supp.2d 758, 773 (E.D.Va.

2005). The resolution of this question does not depend on which participant brings the action

on behalf of the Plan, and therefore the primary issue in the case is common to all members of

the proposed class. *See, e.g., In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 465 (E.D.Pa.

2000) ("[T]he appropriate focus in a breach of fiduciary duty claim is the conduct of the

defendants, not the plaintiffs."). Moreover, should this question be answered in the

affirmative, the following subsidiary issues that must be addressed are similarly common to

all class members: (1) the point in time at which retention of the Company Stock Fund was so

imprudent as to breach US Airways' fiduciary duty; and (2) the losses, if any, suffered by the

Plan as a result of US Airways' breach.  Again, because these issues involve the acts or omissions of US Airways and an evaluation of the Company Stock Fund's strength as an investment option over time, they are common to all Plan participants who might bring an action on behalf of the Plan.

US Airways' contention that issues of loss causation will overwhelm the common questions described above is not persuasive because the alleged breach concerns US Airways' decision to retain the Company Stock Fund as an investment, a decision that is independent of any participant's investment decisions.  *See DiFelice*, 397 F.Supp.2d at 776.  Accordingly, the sole loss causation issue is whether US Airways' alleged breach caused loss to the Plan. As the district court in *In re Electronic Data Systems Corp.*, 224 F.R.D. 613 (E.D.Tex. 2004), aptly put it:

> Plaintiffs are not asserting claims for their own individual accounts' losses. Plaintiffs have filed suit on the Plan's behalf alleging that Defendants' conduct harmed the Plan as a whole and seeking recovery on the Plan's behalf.  There can be no conduct or claims conflicts because each class member is bring suit on the Plan's behalf, not as an individual.  In effect, class members, as the Plan's advocates, are each bringing the exact same suit.

*Id.* at 623.  Thus, individual issues of loss causation do not predominate, indeed are not relevant, unless and until it becomes necessary to allocate any Plan recovery to participants.[8]

*3. Typicality*

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a), Fed.R.Civ.P.  In other words, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Lienhart v. Dryvit Sys., Inc.*,

---

[8] *See infra* Part IV.

255 F.3d 138, 146 (4th Cir. 2001).  It is also true, however, that "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification."  *Gary Plastic Packaging Corp. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1990).

Again, given the representative nature of a suit filed pursuant to ERISA 502(a)(2), DiFelice's claim is necessarily typical of those of the rest of the class.  Because DiFelice's claims are based on the effect the acts or omissions of US Airways had on the value of the Plan, they are essentially identical to the claims of any other participant or beneficiary suing pursuant to ERISA 502(a)(2).  *See, e.g., In re Syncor Erisa Litigation*, 227 F.R.D. 338, 344 (C.D.Cal. 2005) (finding typicality in a § 502(a)(2) suit because "[e]ach of the plaintiffs was a Syncor employee and participated in the Plan during the class period."); *Summers v. UAL Corp. ESOP Committee*, Case No. 03 C 1537, 2005 WL 1323262, at *2 (N.D.Ill. Feb. 17, 2005) (finding typicality in a § 502(a)(2) suit because "the class members will be pursuing the same legal theories based upon Defendants' alleged misconduct."); *McDaniel v. North American Indem., N.V.*, Case No. IP-02-C-0422, 2003 WL 260704, at *4 (S.D.Ind. Jan. 27, 2003) (same).

Seeking to avoid this conclusion, US Airways points out that any calculation of damages in this case will require a comparison of the actual value of the Plan given the retention of the Company Stock Fund, and the hypothetical value of the Plan assuming US Airways had selected a prudent investment to replace the Company Stock Fund.  And, as US Airways correctly argues, this comparison requires determination of the date on which retaining the Company Stock Fund as an investment option became imprudent.  US Airways goes astray, however, when it argues that because each Plan participant has an "optimal

imprudence date," *i.e.*, a breach date when his or her ultimate recovery is maximized, the participants, including DiFelice, will have widely divergent and conflicting interests in prosecuting this case. While it may be true that each Plan participant who invested in the Company Stock Fund has an "optimal imprudence date," this fact alone does not defeat DiFelice's typicality. This is so because, it is also true that the Plan has a single "optimal imprudence date," and as this lawsuit is brought on behalf of the Plan, individual participants' "optimal imprudence dates" are irrelevant. To the extent members of the class, including the class representative,[9] have interests with respect to this date that are slightly divergent with each other, or with the Plan itself, this slight divergence is greatly outweighed by shared interests in establishing US Airways' liability.

*4. Adequacy*

The final requirement of Rule 23(a) is that the class representative and class counsel "fairly and adequately protect the interests of the class." The purpose of the adequacy requirement is to ensure that there are no potential "conflicts of interest between the named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). US Airways does not contest the adequacy of class counsel, but contends that DiFelice is not adequate because he lacks standing and because his aggressive and immoderate trading with respect to the Company Stock Fund subjects him to specific defenses. For the reasons already stated, the attack on DiFelice's standing fails. Nor does DiFelice's trading strategy subject him to a unique defense because, as has been noted, the loss causation inquiry is independent of the actions of particular Plan participants. *See*

---

[9] It is worth noting that according to US Airways' expert, DiFelice's "optimal imprudence date" is March 8, 2002, yet he has proposed a class beginning August 1, 2001.

*DiFelice*, 397 F.Supp.2d at 776.  For these reasons, DiFelice and class counsel are adequate

representatives of the class.

**B.**

DiFelice seeks to certify this class pursuant to Rule 23(b)(1), which provides that a

class may be certified if:

> (1) the prosecution of separate actions by or against individual members of the
> class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual
> members of the class which would establish incompatible standards of
> conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class
> which would as a practical matter be dispositive of the interests of the other
> members not parties to the adjudications or substantially impair or impede
> their ability to protect their interests.

Rule 23(b)(1), Fed.R.Civ.P. Thus, subsection A attempts to avoid possible prejudice to the

defendants, while subsection B is concerned with prejudice to the putative class members.

Alleged breaches by a fiduciary to a large class of beneficiaries present an especially

appropriate instance for treatment under Rule 23(b)(1).  *See* Advisory Committee Notes, Rule

23(b)(1), Fed.R.Civ.P.  Indeed, given the derivative nature of suits brought pursuant to

§ 502(a)(2) on behalf of the Plan, "ERISA litigation of this nature presents a paradigmatic

example of a (b)(1) class." *In re Global Crossing Ltd. Sec. & ERISA Litig.*, 225 F.R.D. 436,

453 (S.D.N.Y. 2004) (quoting *Kolar v. Rite Aid Corp.*, Case No. Civ.A. 01-1229, 2003 WL

1257272, at *3 (E.D.Pa. March 11, 2003)).[10]

---

[10] S*ee also In re Williams Companies ERISA Litig.*, Case No. 02-CV-153TCKFHM,
02-CV-159HM, 02-CV-285-HM, 02-CV-289-HC, 2005 WL 2439185, at *9 (N.D.Okla. Aug.
22, 2005) ("due to ERISA's distinctive 'representative capacity' and remedial provisions,
class treatment under Rule 23(b)(1)(B) is appropriate in this case."). *In re Ikon*, 191 F.R.D. at
466 ("given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk
that failure to certify the class would leave future plaintiffs without relief."); *Kane v. United*

In addition, DiFelice points to the fact that under the bankruptcy court's confirmation order his claims for the alleged breach are limited to the applicable insurance proceeds.  Since the losses to the Plan caused by US Airways' breach conceivably could exceed the insurance coverage, there is a limited fund from which affected Plan participants may recover.  In such situations, certification of a class pursuant to Rule 23(b)(1)(B) is plainly appropriate.[11]   Thus, certification of the proposed class in this suit under Rule 23(b)(1) is appropriate.

## C.

Given that certification of a class of plaintiffs is appropriate in this case, it becomes necessary to resolve the parties' disagreement concerning the appropriate class period.  *See* Rule 23(c)(B), Fed.R.Civ.P.  US Airways contends that the class period DiFelice seeks to

---

*Independent Union Welfare Fund*, Case No. 97-1505, 1998 WL 78985, at *9 (E.D.Pa. Feb. 24, 1998) (holding that since claims are brought pursuant to § 502(a)(2) by plaintiffs "in their representative capacity, the Court finds that certification for these claims is proper under Rule 23(b)(1)(B)."); *Koch v. Dwyer*, Case No. 98 Civ. 5519, 2001 WL 289972, at *5 (S.D.N.Y. March 23, 2001) ("Since Plaintiff is seeking relief on behalf of both Plans as a whole, prosecution of separate actions by individual members would create a risk of adjudications which would be dispositive of the interests of the other members not parties to such adjudications."); *In re Electronic Data Systems*, 224 F.R.D. at 628 ("As Plaintiffs are asserting claims on the Plan's behalf, Defendants are obligated to treat class members alike via their treatment of the Plan itself . . . . Separate adjudication of these issues would be dispositive of other class members' interests.");

[11]  *See* Rule 23(b)(1)(B) Advisory Committee Notes (1966 amendment), which provide as follows:

> In various situations an adjudication as to one or more members of the class will necessarily or probably have an adverse practical effect on the interests of other members who should therefore be represented in the lawsuit.  This is plainly the case when claims are made by numerous persons against a fund insufficient to satisfy all claims.  A class action by or against representative members to settle the validity of the claims as a whole, or in groups, followed by separate proof of the amount of each valid claim and proportionate distribution of the fund, meets the problem.

certify–from August 1, 2001 to August 11, 2002–is overly broad, and a more appropriate class period would begin on (i) October 30, 2001, the date of DiFelice's investment in the Company Stock Fund, or (ii) October 1, 2001, the date identified in DiFelice's proof of claim in the bankruptcy court, and end on June 27, 2002, the date US Airways appointed an independent fiduciary with responsibility over the Company Stock Fund.

US Airways' attempt to tie the class period to the timing of DiFelice's individual investment in the Company Stock Fund is not appropriate.   DiFelice is not required to demonstrate his personal standing at all points throughout the class period in order to satisfy Article III's case or controversy requirement. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).  That DiFelice moved his account assets in and out of the Company Stock Fund is a factor appropriately addressed in the context of Rule 23(a)'s adequacy requirement, which has already been determined in favor of DiFelice's adequacy. *See Id.*

The next disputed issue between the parties concerns whether the class period is restricted by the proof of claim DiFelice filed in the Bankruptcy Court on November 4, 2002, which defined the class period as October 1, 2001 through August 11, 2001.  The facts pertinent to this dispute are as follows: Group and its affiliates filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on August 11, 2002.  DiFelice filed his proof of claim, Claim No. 3126, on November 4, 2002 on behalf of himself and a class of similarly situated participants.  Specifically, Claim No. 3126 alleges that US Airways is liable under ERISA for damages caused to DiFelice and the following proposed class:

> All participants (and their beneficiaries) in the US Airways, Inc. 401(k) Savings Plan [the "401(k) Plan"] who made or maintained investments in the US Airways Common Stock Fund ["Stock Fund"] at any time from October 1,

2001 to August 11, 2002 [the "Class"].

Below this definition of the proposed class, the proof of claim stated that –

> [t]he precise identities and amounts of claims of the Class are currently unknown, except for Vincent DiFelice, whose claim information is specified. More specific information as to the identity and amount of these claims will be supplied through amendment after such information becomes available.

Despite the forecast of more specific information, there is no evidence that DiFelice ever sought to amend Claim No. 3126 in bankruptcy court.

On January 17, 2003, Group and its affiliates filed their First Amended Joint Plan of Reorganization ("POR") which preserved "any claims arising under §§ 1104-1109 and 1342(d) of [ERISA]."[12]  This general reservation of ERISA claims is also found in the Bankruptcy Court Order approving the POR,[13] as was the resolution of DiFelice's specific objection to the Plan of Reorganization, which stated as follows:

> 61. <u>Resolution of DiFelice Objection</u>.  Notwithstanding anything to the contrary contained in the Plan, nothing in the Plan shall be construed to enjoin or prohibit Vincent DiFelice or the class he purports to represent from seeking to enforce Claim No. 3126 solely against any insurance proceeds that may be applicable to this claim . . . provided, however, that this Order shall not be construed to constitute a finding regarding the merits of any such claim or claims that have been or may be asserted by Vincent DiFelice or the class he purports to represent.

In June 2004, DiFelice, US Airways and US Airways' insurers entered into a stipulation regarding DiFelice's claims.  Among other things, the stipulation provided that

---

[12] *See* ¶ 11.5 First Amended Joint Plan or Reorganization of US Airways Group, Inc. and its Affiliated Debtors and Debtors-in-Possession, as Modified.

[13] *See* ¶ 63(m) Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. §§ 1129(a) and (b) and Fed.R.Bankr.P. 3020 Confirming the First Amended Joint Plan of Reorganization of US Airways Group, Inc. and Its Affiliated Debtors and Debtors in Possession, as Modified ("provided, further, however, that this Section 11.5 shall not release any Claims arising under §§ 1104-1109 and 1342(d) of [ERISA].").

> Claim No. 3126 is hereby withdrawn in its entirety without further order of the
> Bankruptcy Court . . . provided, however, that the withdrawal of Claim No.
> 3126 shall not prejudice the Class Claimants' right to pursue a recovery from
> the Available Coverage, if any, in satisfaction of the 401(k) Claims and Claim
> No. 3126.

This operative language contained several defined terms, including "Class Claimants" and the

"401(k) Claims." The "Class Claimants" are defined in the stipulation as DiFelice and those

Plan participants described in Claim No. 3126, and the term "401(k) Claims" likewise refers

to Claim No. 3126. On September 12, 2004, Group and its affiliates, including US Airways,

again filed for bankruptcy protection under Chapter 11. In response, on January 26, 2005, the

Class Claimants and US Airways and its insurers entered into a second stipulation, which

states: "Nothing set forth in this stipulation alters the terms of the Prior Stipulation unless

expressly set forth herein." The second stipulation also expressly incorporates the definition

of 401(k) Claims from the first stipulation, and states that

> [i]t is expressly understood by the Class Claimants that the Class Claimants
> may seek satisfaction of the 401(k) Claims *only as set forth herein and in the
> Prior Stipulation*, and that in no event will the Debtors or their estates be
> liable to the Class Claimants in any other way whatsoever with respect to the
> 401(k) Claims.

(emphasis added). US Airways argues that this language clearly restricts the beginning of the

class period to October 1, 2001 since only the stipulation prevented the discharge of

DiFelice's claims in the Bankruptcy Court proceedings.

   In opposing this conclusion, DiFelice argues that the general language contained in

the POR preserved all ERISA claims, including those not in the proposed class of Claim No.

3126. In the alternative, DiFelice cites authority for the proposition that the discharge of a

debtor under the Bankruptcy Code does not prevent creditors from suing the debtor for the

purpose of recovering insurance. *See Green v. Welsh*, 956 F.2d 30, 33-35 (2d Cir. 1992)

(holding that 11 U.S.C. § 524(e) allows a plaintiff to proceed against an insurer who is liable for the debtor's debt); *In re Jet Florida Systems, Inc.*, 883 F.2d 970, 976 (11th Cir. 1989) (same).

Neither of DiFelice's arguments are persuasive.  The specific language of the stipulation governs the more general language of the POR, and should therefore govern the resolution of this dispute.  *See, e.g., Boeing Co. v. United States*, 537 U.S. 437, 461 (2003); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 385 (1992).  Furthermore, 11 U.S.C. § 524 concerns the effect of a discharge pursuant to 11 U.S.C. § 727 which pertains to individuals, not corporations, and therefore, cases construing the language of § 524(e) are inapposite.  Furthermore, the insurance companies in this case were parties to the stipulation. Thus, DiFelice's reliance on § 524(e) is misplaced, as it furnishes no basis for overriding the parties' stipulation.  Nor does this class certification motion present an appropriate circumstance for the amendment of the original claim, as that original claim has become the subject of a stipulation between the parties to this litigation and the opportunity for amendment has passed.  Thus, the appropriate start date for the class period is October 1, 2001.

Finally, it is true that US Airways may not be held liable for any breach of fiduciary duty that occurred after the date at which it ceased to act as a fiduciary – June 27, 2002.  *See* ERISA § 409(b), 29 U.S.C. § 1109(b).  Therefore, any investments in the Company Stock Fund that occurred after June 27, 2002 were not caused by any alleged US Airways breach and a Plan participant is not entitled to representation in the class if his sole investment in the

Company Stock Fund occurred after June 27, 2002.[14]  Yet, limiting the class to this period

does not foreclose the possibility that the Plan continued to suffer damages after June 27,

2002 as a result of a pre-June 27, 2002 breach by US Airways while it was still a fiduciary.

**IV.**

By separate motion, DiFelice has proposed deferring the allocation of any Plan

recovery among individual participant accounts until after the determination of whether a

recovery to the Plan is ordered.  US Airways opposes this motion because it believes that

each member of the proposed class must bears an individual burden of demonstrating that the

losses suffered in his or her individual account due to an investment in the Company Stock

Fund, which are also losses to the Plan, were caused by US Airways' breach of fiduciary duty

and not his or her own actions.  *See DiFelice*, 397 F.Supp.2d at 778 ("Plaintiffs retain their

ultimate burden to prove that any losses suffered by the plan are the result of U.S. Airways'

alleged breach of its fiduciary duty.").

ERISA § 409(a) makes a fiduciary liable for the Plan's losses resulting from the

fiduciary's breach.  In this respect, determining whether US Airways breached its fiduciary

duty, thereby causing losses to the Plan, does not require each member of the class to

establish individualized loss causation.  The loss causation burden can be satisfied simply by

proving that there was a fiduciary breach, and that but for the breach, the Plan's assets would

have been greater.  *See Dardaganis*, 889 F.2d at 1243.  Should DiFelice satisfy his burden of

_____

[14] As a practical matter the number of Plan participants who were invested in the
Company Stock Fund after June 27, 2002 but had not invested in the Company Stock Fund
during the class period is likely to be quite small, if any, especially given the fact that Aon
Fiduciary Counselors, Inc. closed the Company Stock Fund to new investments soon after its
appointment.

showing breach and causation, he will also have to demonstrate the precise amount of loss to the Plan attributable to US Airways' breach.  Finally, if DiFelice can prove that US Airways' breach resulted in a loss to the Plan, it will be necessary to determine how the Plan's recovery should be allocated among the members of the class.  It is this final step that DiFelice proposes should be deferred and undertaken only after the Plan has obtained a recovery and only if the parties have been unable to reach agreement on the appropriate distribution among Plan participants.  Because ERISA § 409(a) refers only to the Plan's recovery and because jurisdiction after that recovery is unclear, deferring a possibly unnecessary determination of the procedures for allocation of a Plan recovery among class members will conserve judicial resources.  Accordingly, DiFelice's motion is appropriately granted.

**V.**

In sum, pursuant to Rule 23(c), Fed.R.Civ.P. the Court certifies the following class:

> All participants and their beneficiaries in the US Airways, Inc. 401(k) Savings Plan (the "Plan") for whose accounts the fiduciaries of the Plan acquired or held units of the US Airways Group, Inc. Common Stock Fund at any time between October 1, 2001 and June 27, 2002.

In addition, pursuant to Rule 23(g), Fed.R.Civ.P., the Court appoints the law firm of Malakoff Doyle & Finberg, P.C. as class counsel.  Finally, the Court will defer a determination of appropriate individual account allocation procedures until such time as it may become necessary.

An appropriate Order will issue.


_____/s/_____

Alexandria, VA                                          T. S. Ellis, III
March 22, 2006                                         United States District Judge


-22-